IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>EDDIE SYLVESTER STEELE,<br><br>   Defendant. | CRIMINAL CASE NO.<br>1:14-CR-147-WBH-LTW |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION,
ORDER, AND CERTIFICATION OF CASE READY FOR TRIAL**

Pending before this Court is Defendant Eddie Sylvester Steele's ("Defendant") Motion to Motion to Suppress Identification Evidence ("Motion to Suppress") and a Motion to Withdraw as Counsel ("Motion to Withdraw").  (Docket Entries [18, 47]).  This Court convened a evidentiary hearing with respect to the Motion to Suppress on December 5, 2014 (Docket Entry [38]), after which Defendant submitted a post-hearing brief in support of his Motion to Suppress (Docket Entry [42]).  The Government filed a response in opposition to Defendant's Motion to Suppress (Docket Entry [45]), and the Defendant filed a reply in support on.  (Docket Entry [46]).  Additionally, on March 10, 2015, Vionnette Johnson, counsel for Defendant ("Counsel"), filed the Motion to

AO 72A
(Rev.8/82)

Withdraw. (Docket Entry [47]). A hearing with Defendant in attendance on the Motion to Withdraw was held on March 30, 2015. (Docket Entry [50]).

Having considered the motions and all supporting documents submitted, for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED** (Docket Entry [18]), and **DENIES** the Motion to Withdraw. (Docket Entry [47]).

## MOTION TO SUPPRESS

### I. Background

On April 23, 2013, a federal grand jury entered a two count indictment against Defendant for (1) interfering with commerce by robbery using actual or threatened force, violence, or fear of injury in violation of 18 U.S.C. § 1951(a), and (2) using, carrying, or brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Docket Entry [1]). Specifically, the indictment contends that during the commission of an armed robbery, Defendant took mobile phones and money from an IM Wireless Store in East Point, Georgia. (Id.). Two eye witnesses, Vivian Burgos-Trujillo ("Burgos-Trujillo") and Everett Williams ("Williams") reviewed and completed "Photographic Lineup Admonition" forms ("admonition forms") and made identifications of the perpetrator of the robbery in photographic lineups ("photo arrays").

2

AO 72A
(Rev.8/82)

(Docket Entry [18], Exs. 1-2[1]; see also Transcript of December 5, 2014 Evidentiary Hearing ("Tr."), Docket Entry [39], 7-8).  Defendant now moves to suppress any in-court identification evidence or testimony based upon the out-of-court identifications by Burgos-Trujillo and Williams.  (Docket Entries [18, 42]).

### A.     The Photo Array

Russell Popham ("Capt. Popham"), a then-captain with the City of East Point Police Department ("EPPD"), investigated the robbery of the IM Wireless store. (Tr. 6-7).  In the course of the investigation, Capt. Popham determined there were witnesses to the robbery, one of whom, Williams, was a customer in the store at the time of the robbery.  (Tr. 7).  Capt. Popham created a photo array of six individuals to show Williams.  (Id.).  Each of the photographs in the array matched the description of the perpetrator provided by eyewitnesses to the robbery, who described the perpetrator as a slim, tall, black male with long dread-locks.  (Tr. 8, 13).  Additionally, the photographs all matched images of the perpetrator obtained from surveillance footage of the robbery. (Tr. 13).  The photographs were all of the same size, and were all in color.  (Tr. 7-8; see also Docket Entry [18], Ex. 1).  Each individual in the photo array was a black male,

---

[1] The portion of the Exhibits to the Motion Suppress pertaining to Williams's identification were admitted as Governments Exhibits A and B during the Evidentiary Hearing on the Motion to Suppress.  (See Docket Entry [39]).

with similar complexion and build; of approximately the same age; without distinguishing marks; with similar facial hair; and with shoulder-length dread-locks pulled away from the face. (Docket Entry [18], Ex. 1). Certain of the individuals had different colored shirts. (Id.). Though Defendant suggests that Capt. Popham knew that Defendant was included in the photo array, no evidence or testimony appears to have actually been presented to the Court on that point. (See Docket Entry [42], p. 8; Docket Entry [46], pp. 1-2; see also Docket Entries [18, 38, 39]). Regardless, the Government appears to concede the issue for purposes of the Motion to Suppress. (See Docket Entry [45], p. 6 ("Popham's knowedge that [Defendant]'s photograph was included in the lineup does not implicate due process concerns.")).

### B. The Admonition Form

The admonition form includes a "Photographic Lineup Admonition" (the "Admonition"), along with an instruction statement, information boxes to be completed, and a signature line. (Docket Entry [18], Ex. 2). The Admonition reads:

> In a moment I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. Keep in mind that hairstyles, beards and mustaches may easily be changed. Also, photographs may not depict the true complexion of a person. It may be lighter or darker than shown in the photograph. Pay no attention to any markings or numbers that may appear on the photographs. When you

> have looked at all of the photographs tell me whether or not you see the person who committed the crime and point to that picture. Do not tell other witnesses that you have or have not identified anyone.

(Docket Entry [18], Ex. 2). Under the admonition is the instruction statement, "Please complete if witness was able to identify the suspect involved." (Id.). Following that statement are boxes regarding the witness's name, the date, and the EPPD case number. (Id.). Below those is another instruction to "Please complete all questions below," along with questions relating to the identification process. (Id.). Finally there is a signature box to be signed if all of the above information "is true to the best of [the witness's] knowledge." (Id.).

### C. Identification by Williams

Capt. Popham and Williams initially planned to meet at Williams' house on December 3, 2013, to review the photo array. (Tr. 8). Capt. Popham traveled there on December 3, 2013, with the photo array and the admonition form. (Tr. 8-9). Capt. Popham arrived first, and while waiting on Williams to arrive home, Capt. Popham completed the top blank portions of the admonition form regarding the witness' name, the date, and the EPPD case number. (Tr. 9-10, 13-14; see also Docket Entry [18], Ex. 2). After completing those portions of the admonition form, Capt. Popham spoke to Williams, who was unable to meet that day because his vehicle was stuck in mud at a

5

job-site. (Tr. 10-11). They arranged to meet three days later on December 6, 2013. (Tr. 11).

On December 6, 2013, Capt. Popham met with Williams. (Tr. 11). Before reviewing the photo array, Capt. Popham read the Admonition to Williams, had Williams read the Admonition to himself, and then had Williams sign the signature box on the admonition form. (Tr. 12, 14-15). Capt. Popham testified that he usually has his witnesses, including Williams, review the Admonition and sign the admonition form before reviewing a photo array because he wants to ensure that they properly understand the Admonition before proceeding to any identification using the photo array. (Tr. 16). Capt. Popham then showed the photo array to Williams, who identified the perpetrator. (Tr. 11-12, Docket Entry [18], Ex. 1). Williams circled the picture of the perpetrator on the photo array, and signed and dated the photo array. (Tr. 12, Docket Entry [18], Ex. 1). After Williams identified the perpetrator, Capt. Popham completed the remainder of the admonition form – which consisted of blank or circle boxes relating to which law enforcement official arranged the photo array; whether the witness was accompanied to the review of the photo array; whether the witness discussed any of the suspects on the way to review the photo array; whether the witness was told someone was in custody in relation to the crime; the amount of time it took to identify the perpetrator,

6

AO 72A
(Rev.8/82)

and whether the witness knew the name of the perpetrator – for Williams. (Tr. 14-15). This appears to have been done without Williams' direct input. (Tr. 14-15).

### C. Defendant's Arguments for Suppression

Defendant now moves to suppress any in-court identification evidence or testimony based upon the out-of-court identifications made by Burgos-Trujillo and Williams using the photo arrays.[2] Defendant argues the procedures involved in the identifications were impermissibly suggestive and that evidence and testimony based

---

[2] In the initial Motion to Suppress, Defendant took issue only with the three-day discrepancy between the dates contained in Williams' admonition form (December 3, 2013) and the date contained on his identification in the photo array (December 6, 2013). (Docket Entry [18]). Defendant has abandoned this in favor of the arguments made out in his post-hearing brief, which are addressed below. (Docket Entry [42]).

Separately, during the hearing, testimony was solicited from Capt. Popham solely regarding the preparation of the photo array, the completion of Williams' admonition form, and Williams' identification of the perpetrator in the photo array. (See Docket Entry [39]). Although no testimony was solicited with regard to the procedure used with and/or identification made by Burgos-Trujillo, Defendant argues in his post-hearing brief and reply that the Court should infer that the same procedures were followed with respect to Burgos-Trujillo's identification, and that any in-court identification based upon her out-of-court identification be suppressed as well. (Docket Entry [42]). Because the Court recommends that Defendant's Motion to Suppress be denied in consideration of the evidence and arguments pertaining to Williams' out-of-court identification, even assuming, *arguendo*, the same procedures were followed for Burgos-Trujillo's identification, the Motion to Suppress should be denied as to identifications based upon Burgos-Trujillo's out-of-court identification as well.

7

upon them should therefore be excluded under the Due Process Clause. (Docket Entries [42. 46]). Defendant contends that the procedures were unduly suggestive, first, because Williams signed the admonition form before reviewing the photo array and making his identification, and second, because the identification process was not done on a double-blind basis.[3]  (Id.). As a result, Defendant requests that the identifications be suppressed, or that, at a minimum, the reliability of the witnesses' identifications be tested for suppression purposes before trial.  (Id.).

## II.    Legal Analysis

The Due Process Clause warrants the suppression of evidence when it is "is so extremely unfair that its admission violates fundamental conceptions of justice . . ." Perry v. New Hampshire, 132 S. Ct. 716, 723 (2012) (internal quotation and citations omitted).  With regard to the conduct of identification procedures, the Supreme Court has recognized that in some circumstances, they may be "so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law."  Foster v. California, 394 U.S. 440, 442 (1969) (applying a totality of the circumstances standard) (internal quotation marks omitted); see also Simmons v. United

---

[3] That is, the photo array was presented by someone who knew the suspected perpetrator was included in the array.  A double-blind procedure would require the presenting officer to be unaware of the presence or non-presence of any suspect.

8

States, 390 U.S. 377, 384 (1968) (holding that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").  Ultimately, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198 (1973).

In the Eleventh Circuit, a two-step analysis is used to determine whether the admission of an out-of-court identification violates due proces. Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988).  First, a court must determine if the original identification procedures were unduly suggestive. Id.  The defendant bears the burden of proving that the identification procedure used was "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Simmons, 390 U.S. at 384 (cited in Neil, 409 U.S. at 198).  Only if the identification procedures were unduly suggestive must a court then consider whether, under the totality of circumstances, the identification was nonetheless reliable. Cikora, 840 F.2d at 895.

Factors considered in determining whether a photo array is unduly suggestive include the size of the array, the manner of its presentation, and details of the

9

photographs themselves.[4]  See United States v. Sanchez, 24 F.3d 1259, 1262 (10th Cir. 1994); see also, Marsden v. Moore, 847 F.2d 1536, 1545-46 (11th Cir. 1988).  If there is nothing inherently prejudicial about the presentation, such as the use of a very small number of photographs or the use of suggestive comments, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [the Defendant] was more likely to be the culprit." United States v. Rosa, 11 F.3d 315, 330 (2d Cir. 1993).

### A. Witnesses Signing the Admonition Form Before Reviewing the Photo Array was Not Unduly Suggestive

This Court is unpersuaded by Defendant's argument that Capt. Popham's procedure – of reviewing the Admonition with a witness and having him sign the

---

[4] Though Defendant has not raised the issue, the use of six photographs in the photo array does not cause the array to be unconstitutionally suggestive. See, e.g., Sanchez, 24 F.3d at 1263 (six photograph array not unconstitutionally small); Rosa, 11 F.3d at 330 (six photographs not impermissibly small); United States v. Bennett, 409 F.2d 888, 898 (2d Cir. 1969), cert. denied, 396 U.S. 852 (1969).  Similarly, the minor differences in the clothing among the six men depicted in the photo array is not unduly suggestive.  See United States v. Smith, 148 F. App'x 867, 874-75 (11th Cir. 2005) (lineup not unduly suggestive even though suspect was only one of two people in six person lineup wearing blue T-shirt and the only person shown in front of a cinder block background); Meeks v. Moore, 216 F.3d 951, 968 (11th Cir. 2000) (fact that defendant was only person in lineup wearing yellow shirt, yellow pants and no shoes did not make it unduly suggestive).

10

admonition form prior to making an identification – was unduly suggestive. Defendant suggests that the procedure used could have pressured Williams into identifying a perpetrator because, by completing the admonition form, which included the instruction that it be completed "if [the] witness was able to identify the suspect involved," he had "no choice but to pick someone out of the lineup." (Docket Entry [46], pp. 1-2). Despite Defendant's arguments to the contrary, the Eleventh Circuit has concluded that a lineup is not suggestive when witnesses are told that the suspect was in the lineup. Smith, 148 F. App'x at 874; United States v. Cikora, 840 F.2d 893, 896-97 (11th Cir. 1988). Likewise, any pressure Williams may have felt would have been counter-balanced by the emphasis Capt. Popham placed on the Admonition itself. United States v. Moulton, No. 1:10-CR-120-MHS, 2011 WL 902639, at *9 (N.D. Ga. Mar. 14, 2011) (reading an admonition that a "group of photos may or may not include a photograph of the person who committed the crime" was sufficient to allay any pressure to make an identification). As a result, the identification procedures were not unduly suggestive simply because Williams reviewed and signed the admonition form before proceeding to the photo array.

11

### B. Capt. Popham's Knowledge that Defendant's Photograph was Included in the Photo Array was Not Unduly Suggestive

This Court also cannot conclude that because Capt. Popham purportedly knew that Defendant was included in the lineup made it unduly suggestive. Evidence presented to the Court shows that the only instructions and/or cues that Capt. Popham gave to Williams were limited to reading the Admonition; giving the admonition form to Williams to review the Admonition himself; instructing Williams to date and sign the admonition form; and instructing Williams to circle the person Williams identified as the perpetrator of the robbery in the photo array, and then to date and sign the completed array. There is no evidence before the Court that Capt. Popham gave any verbal or nonverbal suggestion, gesture, or other cue that influenced any identification. Because of this, the procedures were not unduly suggestive. Smith, 148 F. App'x at 874-75 (finding that where no evidence existed that officer influenced the process with nonverbal cues, gestures or signals, the process was not suggestive merely because the officer conducting the lineup knew which photo array contained the suspect and could *potentially* influence the process); Moulton, No. 2011 WL 902639, at *8-9 (defendant's argument that a photo lineup conducted by an officer with knowledge of which individual was the suspect "likely" resulted in non-verbal clues to witness, without

12

additional citation to specific evidence that the officer "did or said anything to suggest what photograph" to choose the suspect, was mere speculation and did not implicate undue suggestiveness).

Moreover, this Court rejects Defendant's argument that showing photographic lineups in a non-double-blind manner is automatically suggestive. The Supreme Court has been clear that in improper identification cases, the issue is "not [the] suspicion of eyewitness testimony generally, but only t[he] improper police arrangement of the circumstances surrounding an identification." Perry, 132 S.Ct. at 726. Thus, Defendant has conflated the issue of reliability of witness testimony with the issue of whether there is undue suggestiveness attributable to law enforcement – that is, some "taint of improper state conduct." Id. at 728. Courts in this district have specifically rejected Defendant's argument on this basis,[5] because the fallibility of witnesses – whether in a double-blind or non-double-blind identification procedure – does not bear on the suggestiveness of the identification procedure used by law enforcement for due process purposes. United States v. Mustafa, No. 1:11-CR-234-01-CAP, 2012 WL 1904595, at

---

[5] Indeed, Courts in this district specifically rejected the conclusions of the study and New Jersey Supreme Court Report cited by Defendant in making his argument, at least insofar as they pertain to the legal issue of undue suggestiveness under the Due Process Clause.

13

*5-6 (N.D. Ga. Apr. 12, 2012), <u>report and recommendation adopted</u>, No. 1:11-CR-0234-1-CAP, 2012 WL 1903255 (N.D. Ga. May 25, 2012). Accordingly, just because a double-blind procedure may be more accurate and reliable according to current scientific literature, it does not follow that non-double-blind procedures constitute unduly suggestive procedures for the purposes of the Due Process Clause. Thus, while the Defendant understandably seeks to attack the photo array identifications based, at least in part, on the scholarly literature presented here, he will need to challenge their reliability by means other than exclusion.

### III.  Conclusion

For the reasons outlined above, based upon the evidence presented to the Court, the identification procedures utilized by Capt. Popham were not unduly suggestive. Accordingly, the Court need presently assess the reliability of the identifications themselves. <u>Cikora</u>, 840 F.2d at 895. Defendant's Motion to Suppress identification evidence and testimony based upon the photo array identifications by Burgos-Trujillo and Williams should be **DENIED**.  (Docket Entry [18]).

### MOTION TO WITHDRAW

Defendant's Counsel has moved the Court to permit her to withdraw as counsel for Defendant. (Docket Entry [47]).  In the Motion to Withdraw, she contends that she

and Defendant have been unable to agree upon a defense strategy, that Defendant desires to present arguments Counsel is unwilling to make, and that Defendant has indicated that he wishes to represent himself on a pro se basis to that he can present his desired arguments. (Id., pp. 1-3).

"A defendant in a criminal trial has a constitutional right to proceed without counsel when he knowingly, voluntarily, and intelligently elects to do so." United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing Faretta v. California, 422 U.S. 806, 833-36 (1975)). "Before being allowed to waive the benefit of counsel, an accused 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his decision is made with open eyes.'" Cash, 47 F.3d at 1088 (citing Faretta, 422 U.S. at 835) (citations and quotations omitted). The preferred method of waiver is a hearing, at which a defendant is made aware of the charges, criminal pre-trial and trial procedures, the hazards of self-representation, the inherent difficulties in any criminal trial, the importance of evidential rules, and other relevant circumstances. Cash, 47 F.3d at 1088 (cioting Strozier v. Newsome, 926 F.2d 1100, 1104 (11th Cir. 1991), cert. denied, 502 U.S. 930 (1991).

A hearing was held with Defendant on March 30, 2015. (Docket Entry [50]). During the hearing, Defendant was informed of the myriad issues involved in self-

15

representation in this case; questioned about his legal training and ability to competently prepare and present his case; questioned about his motivations for waiving counsel; informed about how his concerns may or may not be addressed by proceeding pro se; and questioned about his understanding of the consequences of waiving counsel. (Id.). At the conclusion of the hearing, Defendant indicated his desire to retain present counsel. Accordingly, the Motion to Withdraw is **DENIED**. (Docket Entry [47])

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**. (Docket Entry [18]). The undersigned further **DENIES** the Motion to Withdraw. (Docket Entry [47]). There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this  1  day of May, 2015.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)